# Richmond

FRANK P. KAVANAUGH, ET AL., ETC. v. CLEO B. DONOVAN.

March 3, 1947.

Record No. 3169.

Present, Hudgins, Gregory, Eggleston and Buchanan, JJ.

The opinion states the case.

*Perrow & Rosenberger*, for the plaintiffs in error.

*K. C. Moore* and *George D. Conrad*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Cleo B. Donovan instituted an action at law against Frank P. Kavanaugh and Benjamin J. Kavanaugh, partners, trading as the Lynchburg Rendering Company, for damages for waste in their occupation and use of premises owned by Donovan.

The parties will be referred to in the position they occupied in the court below. There Donovan was the plaintiff and the Kavanaughs, as partners, the defendants.

A trial by jury was had and a verdict in favor of the plaintiff for $3,000 resulted. A judgment was entered upon the verdict.

In July, 1942, the plaintiff, who was the owner of the premises here involved, consisting of a building and equipment therein, negotiated with the defendants for its rental. The property is located in Rockingham county some two miles south of Harrisonburg. A preliminary oral agreement was reached between them for the rental of the property for a term of three years beginning August 1, 1942, and expiring July 31, 1945. At the request of the plaintiff his attorney prepared a written lease. Later this lease was forwarded to the defendants at their place of business in Lynchburg for execution. They refused to sign the lease because they desired a provision embodied therein whereby they would have been released from liability in the event they were

proceeded against by those who might object to the kind of business which they proposed to conduct on the premises. The plaintiff refused to permit this provision to be embodied in the lease.

In the meantime the defendants entered into the occupancy of the property and began the operation of a rendering business, and the payment of the agreed rental of $100 per month in August, 1942.

Just prior to their occupancy this building was being used by the plaintiff as a slaughter-house and had been so used for many years. It consisted of two floors and a basement, and the roof was covered by composition tar paper. In the summer the windows were removed but reinstalled in the winter. There was located in the building a boiler, condensers or electric motors, and refrigerators. There was a fence surrounding the building which had enclosed the cattle and formed a passage-way through which they were conducted into the room where they were slaughtered.

The rendering business conducted on these premises consisted of gathering the carcasses of dead animals, hauling them to this plant, cutting and packing them and sending the packages to another plant. Many of the carcasses when received were decayed. The plaintiff knew that this kind of business would be conducted on his premises which, as we have stated, he had previously used for many years as a slaughter-house.

The unexecuted lease contained a provision whereby the defendants would "leave the premises in good repair as now found, reasonable wear and tear excepted * * * . Make all repairs to said premises and equipment thereon as may be necessary during the term of this lease." The plaintiff reserved the use of a room on the second floor for storage purposes and during the term of the lease was on the premises on only two occasions.

The evidence discloses that at the beginning of the occupancy the building was in good condition considering the purpose for which it was used. There were two leaks in the roof, of which the plaintiff had knowledge.

The defendants continued to occupy the premises until March 1, 1946, when they vacated in accordance with a notice from the plaintiff. Later the plaintiff instituted the present action for waste and wanton waste, claiming single damages of $5,000 and double damages of $10,000. He claimed that the defendants had damaged the doors, windows, floors, roofing, joists, beams, rafters, and other parts of the building; that the condensers in the basement would have to be replaced; that the boiler had been ruined; that damage had been done to the electrical system; and that the plant would have to be painted. A bill of particulars was filed specifying the various items of damage, and double damages were demanded for each and every item set out in the bill of particulars. The total of the single damages as shown in the bill of particulars was $3,571.50, and double damages of $7,143.

In the notice of motion for judgment the cause of action was founded upon both contract and tort. A demurrer was filed to the notice, for misjoinder, and the court sustained it. The plaintiff then elected to proceed in tort.

Motion was then made to require the plaintiff to strike out of the notice of motion any allegation as to wanton waste but this motion was overruled.

At the trial of the case the plaintiff offered in evidence the unexecuted lease as evidence of the oral agreement between him and the defendants in which there was the provision requiring the defendants to make all necessary repairs to the premises and equipment and return it in the condition in which it was found. The trial court allowed this lease to be admitted in evidence for the purpose of establishing the relationship between the parties. This is made the basis of the principal assignment of error.

As the trial proceeded the court did not hold the plaintiff to his election. As we have seen, it permitted him to introduce in evidence the unexecuted lease which carried the objectionable provision requiring the defendants to repair the building and to leave it in good repair as it was when they received it.

█ The action being one for tort, liability was necessarily to be founded on the wrong or negligence of the defendants in their use and occupation of the premises. It was not to be based upon any contract right to return the premises in good repair. Therefore, the unexecuted lease was not a material consideration. It was improper evidence which was bound to have carried to the jury the idea that the measure of the defendants' duty was to leave the premises in good repair and that they would make necessary repairs. This, of course, was not the measure of the defendants' duty under the form of action adopted by the plaintiff. The true measure of their liability was that they would be responsible for their own voluntary and wilful acts resulting in damage to the property, and also that they would be liable for damage resulting from their negligence. They would also be liable for double damages for waste committed wantonly. This, of course, includes the acts and conduct of their servants and agents in the furtherance of their business.

█ In 67 C. J., Waste, p. 635, is this language: "The general rules as to burden of proof in actions at law and in equity apply in actions to recover for and to enjoin waste. It devolves on plaintiff to show that waste has been committed to his injury and the amount of damage, if any, to the freehold. This includes the burden of proving that the alleged act of the tenant was not *rightfully done*, for the presumption is in favor of the latter until the contrary appears from the evidence. * * * " (Italics supplied.) Also, see *Moses* v. *Old Dominion Iron, etc., Co.*, 75 Va. 95, and *Powell* v. *John E. Hughes Orphanage*, 148 Va. 331, 138 S. E. 637.

In the latter case the action was brought on a covenant, yet the court held that in the absence of negligence no recovery could be had, citing Code, sec. 5180. That section, in part, provides that "no covenant or promise by a lessee * * * that he will keep or leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise in whole or in part *without fault or negligence on his part* * * * ." (Italics supplied.)

Negligence being essential to a recovery on an action on a covenant or promise under our statute (sec. 5180), it would seem just as essential when the action is in tort. No valid reason exists for a distinction.

This requirement that negligence be shown in a tort action for waste, and the obligation of the tenant in respect to the property, is clearly stated in 32 Am. Jur., Landlord and Tenant, sec. 779, p. 665, as follows:

"Except for the right of a tenant to make certain uses of the demised premises, although such uses cause ordinary wear and tear, and except for any express or implied agreement to the contrary, there is an obligation on a tenant, resulting from the relation of landlord and tenant, to treat the demised premises in such manner that no substantial injury shall be done to them by him through any negligence or wilful misconduct on his part. This implied obligation is as much a part of the contract of lease as if it were incorporated into it by express language. If, by the negligence or misfeasance of a tenant, the demised property is materially injured, he is liable for the resultant damages, and the landlord may recover the amount thereof from him within the term, notwithstanding he has paid the rent or is bound to pay it. A tenant must use the premises in a tenant-like manner, and he is liable to the landlord for injuries to him caused by a failure to use the premises in such manner. * * * "

The plaintiff contended and the court held that the lease was admissible in evidence because it disclosed the relationship of the parties. The answer to this is that the relationship was not only admitted by the parties but it was otherwise actually proven when it was shown that the defendants occupied the premises and the plaintiff received and accepted the rent for some three and a half years.

No valid reason has been given for the admission of this evidence. It was immaterial and threw no light on the case. It could have misled and most likely did mislead the jury by causing them to believe that the defendants were under a

contract obligation to repair the premises when in reality they were not under any such obligation.

■ It is elementary that causes of action in tort and contract should not be joined in the same notice of motion or declaration. They are not of the same nature. See Burks Pleading and Practice, 3rd Ed., sec. 99, p. 201.

■ While the court required the plaintiff to elect which cause of action he would pursue and he did elect to proceed in tort, yet in the trial of the case he was allowed to proceed in both ways just as though no election had been required. This, of course, was improper.

In addition to being permitted to introduce the unexecuted lease the court, upon some insistence of counsel for plaintiff, granted instruction No. 1 embodying the plaintiff's erroneous theory that the cause of action could proceed upon contract and not upon tort. This action discloses a confusion of causes of action by the court and counsel for the plaintiff as will be seen from a reading of the instruction. It is as follows:

"The court instructs the jury that it was the duty of the defendant, Lynchburg Rendering Company, as lessee, of Cleo Donovan, to use ordinary care and prudence to protect the leased premises, *and to return the same at the end of the lease in substantially the same condition as found,* reasonable wear and tear excepted, and if you believe from a preponderance of the evidence that the said Lynchburg Rendering Company, its servants, or agents, failed to perform such duties, and that by reason thereof, the value of said premises has been diminished then you shall find for the plaintiff." (Italics supplied.)

This instruction, as is clearly shown from its language, predicated liability upon a breach of the unexecuted lease rather than for a tort. It was erroneous.

The same error persisted in instruction No. 1-A granted at the request of the plaintiff. It omits any reference to negligence which is an important essential. Negligence has to be proven in this case before liability could be fastened upon the defendants for permissive waste, yet under this instruc-

tion, just as under instruction No. 1, a recovery might be had in the absence of any negligence on the part of the defendants.

Instruction No. 3, granted at the request of the plaintiff, was likewise erroneous because it again made liability dependent upon a breach of agreement. It also carried a provision whereby the jury were told that if the damages resulted from wanton acts the defendants should pay double damages.

Double damages for wanton waste may be recovered if the evidence sustains it. See Code, sec. 5509. From the verdict of the jury it cannot be ascertained whether double damages were awarded. The action was for single damages of $3,571.50, and double damages of $7,143.

■ There were many items of damage listed in the bill of particulars, and double damages were asked for each item. The bill of particulars discloses at least five items as "missing". The evidence fails to show any acts of wantonness as to the loss of these items. Wanton waste, double damage and its extent, were jury questions. The defendants admitted single damages of $500, and also admitted that they had been negligent to that extent.

■ The verdict of $3,000 may or may not have included double damages. The jury may have found single damages of $1,500 and double damages for the same amount, or $3,000. Or they may have found single damages of $3,000. It is impossible to conclude that they were not improperly influenced by the erroneous admission of the unexecuted lease and by the incorrect instructions.

■ It was assigned as error that the plaintiff did not allege that the acts causing the damage were committed by the agents and servants of the defendants. There is no merit in this point for the defendants were responsible for the premises and if their agents and servants, in the conduct of their business, committed waste, the defendants would be liable therefor. If the allegation was too indefinite in this respect the defendants seasonably should have requested that it be made more specific as provided in Code, sec. 6118.

 It was also claimed by the defendants that inasmuch as the plaintiff retained the use of an upstairs room that this made the occupancy of the plant joint between the plaintiff and the defendants. The evidence discloses that the plaintiff used this room to store certain property and in the three and a half years of occupancy he came there twice. There is no evidence that he exercised any other control over the premises. We do not think this could be considered such joint occupancy as would relieve the defendants of the duty resting upon them to exercise reasonable care not to damage the property.

 The court struck from the bill of particulars an item of $400 for painting the building. This action is assigned as cross-error. The bare relationship between landlord and tenant is ordinarily sufficient to imply a promise on the part of the tenant to treat the premises in a proper manner. However, the tenant, in the absence of contract, is not required to make permanent and lasting improvements to the property. 32 Am. Jur., Landlord and Tenant, sec. 780, p. 667. We think there is no merit in the cross-assignment.

Waste and waste committed wantonly, negligence and the damages recoverable, whether single or double, were questions for the jury under proper instructions. For the errors indicated, the case must be remanded to the circuit court for a new trial on the *quantum* of damages alone. (Code, sec. 6365). The defendants have admitted that they were guilty of waste and have admitted liability for single damages of $500. Before determining the damage the plaintiff should specify the items of damage as shown in his bill of particulars for which he claims double damages. The jury should be instructed to segregate single damages from double damages if they find double damages, and fix the amount of each. The jury should also be instructed on the meaning of waste committed wantonly under Code, sec. 5509, in order to be properly informed whether to punish the defendants for wanton acts, if any, by fixing double damages.

There are many other assignments of error. These have been maturely considered and need not be noticed in this opinion in view of what we have decided.

*Reversed and remanded.*